UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**DANA TURNER**
    Plaintiff

v.                                                                                            **No. 5:08CV-00207-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on September 11, 2008, by administrative law judge (ALJ) Phylis Pierce. In support of her decision denying Title II and Title XVI benefits, Judge Pierce entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since August 10, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairment: moderate degenerative changes of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

      5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot climb ladders, ropes or scaffolds; cannot be exposed to vibration; and cannot work in a hazardous environment or at unprotected heights.

      6. The claimant is capable of performing past relevant work as a cashier, waitress, production worker, and housekeeper (as generally performed in the national economy). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

      7. The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Administrative Record (AR), pp. 11-17).

## Governing Legal Standards

      1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*,

3

773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Mental impairments

The primary evidence in this case concerning the plaintiff's mental impairments was obtained on May 27, 2008, shortly before the administrative hearing on August 19, 2008. On May 27, 2008, the plaintiff was examined, at the request of counsel, by licensed clinical psychologist R. Gordon Williams, Ph.D. Dr. Williams' narrative report is at AR, pp. 316-321. Dr. Williams

4

stated that "Mrs. Turner describes ongoing significant medical problems to include degenerative disc disease, emerging arthritis, memory and concentration problems that may be related to a recently diagnosed 'fatty tumor' as well as felt-pain throughout her body that may be fibromyalgia" (AR, p. 316).

Dr. Williams administered an IQ test, which revealed a verbal IQ of 92, a performance IQ of 67, and a full-scale IQ of 82. According to Dr. Williams, the 25-point difference between the plaintiff's verbal and performance IQ is significant and suggests an "organic factor," i.e., brain tumor (AR, p. 318). A "possible right hemispheric dysfunction" was further indicated by the fact that "visual attentive skills are more impaired at this point than are auditory attentional abilities" and the fact that the plaintiff's verbal skills disproportionately exceed her mathematical and reasoning abilities, which "due to their abstract and symbolic nature, require more sustained attention"(AR, pp. 318-319). Dr. Williams observed that "as the nature of the task requires sustained concentration and attention, Mrs. Turner's performance declines markedly" and, hence, "she is the type of individual for whom instructions will need to be simple and repetitive in nature at this point in order to avoid confusion" (AR, pp. 318-319).

In addition to these significant cognitive deficits, Dr. Williams opined that the plaintiff is still experiencing severe depression and emotional problems following the death of her husband in January of 2006. Mr. Turner drowned in a barge accident. The plaintiff told Dr. Williams that "I can't stop thinking about him and I continue to have nightmares about his death" (AR, p. 318). According to Dr. Williams, the plaintiff has not "sufficiently grieved the death of her husband at this point and remains in a prolonged state of emotional distress and trauma as a result" that significantly affects her functional abilities and particularly her ability to sustain attention and concentration (AR, p. 320). Dr. Williams concluded that the plaintiff is not a suitable candidate for any type of work or retraining due to her severe attentional and concentration problems and emotional distress

(AR, p. 321). Dr. Williams completed the standard mental assessment form finding that the plaintiff is "markedly" limited in 11 of 20 functional areas (AR, pp. 322-323). The VE testified that acceptance of Dr. Williams' finding would render the plaintiff disabled (AR, p. 46).

In her written decision, the ALJ acknowledged that an MRI and CT scan of the plaintiff's brain indicate the presence of an "intracranial mass" as indicated by Dr. Williams and that she suffers from a "mood disorder" (AR, p. 14). However, the ALJ concluded that neither condition results in "significant symptoms which have imposed more than a minimal limitation on her ability to work for a continuous period of at least 12 months" (AR, p. 14).

A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.

The magistrate judge concludes that Dr. Williams' medical opinion that the plaintiff is "markedly" impaired in her ability to maintain attention and concentration due to a possible organic factor is uncontradicted in the administrative record, and the ALJ had no medical basis for completely discounting that opinion. Furthermore, every medical source who has examined or

6

evaluated the plaintiff, despite the fact that they did not indicate awareness of the plaintiff's brain tumor or possible organic mental impairment, found a "severe" mental impairments to be present. For example, besides Dr. Williams' assessment, the next-most-current psychological opinion in the record is that of the non-examining state agency program psychologist, Dan Vandivier, Ph.D., who opined that the plaintiff has "moderate" restrictions in the following areas: 1) ability to carry out detailed instructions; 2) maintain attention and concentration for extended period; 3) interact appropriately with the general public; 4) respond appropriately to changes in the work setting; 5) be aware of normal hazards and take appropriate precautions; 6) travel in unfamiliar places or use public transportation; and 7) set realistic goals or make plans independently of others (AR, pp. 277-278). See also completion of mental assessment form by program psychologist / psychiatrist Alex Guerrero, M.D., and narrative report of Bruce Amble, Ph.D. (AR, pp. 250-251 and 209-215). The magistrate judge concludes that the ALJ's finding of no "severe," or vocationally significant, mental impairment is not supported by substantial evidence in the administrative record. Furthermore, to the extent the impairment is "organic," it appears that it would also satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

    The more difficult question occasioned by the foregoing conclusion is whether, the court should now, in effect, give controlling weight to Dr. Williams' disabling findings and judicially award benefits. In this regard, the plaintiff's strongest argument is that in light of Dr. Williams' finding that she has a valid performance IQ of 67, she meets the criteria of Listing 12.05(C) ("mental retardation") and, hence, qualifies for a conclusive presumption of disability. This Listing requires a showing of subaverage intellectual functioning with deficits in adaptive functioning

7

"manifested during the developmental period, i.e., ... before age 22," and a showing of a valid IQ score of 60 through 70 together with an additional impairment imposing a work-related limitation of function. The magistrate judge concludes that the plaintiff has failed to establish that her cognitive impairment meets or equals the criteria of the Listing because there is no indication that the degree of impairment indicated by Dr. Williams' finding of a performance IQ of 67 existed during the developmental period. On the contrary, the thrust of the plaintiff's argument is that the low IQ is a new development based upon a brain tumor. Therefore, a judicial award of benefits pursuant to the Listing would be inappropriate.

Nevertheless, it is apparent that the plaintiff's cognitive impairment, to the extent it was fairly described by Dr. Williams, is no less "severe" at the present time simply because it came into existence after age 22. In *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir., 1994), it was held that:

> If a court determines that substantial evidence does not support the [ALJ's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.... A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

The magistrate judge concludes that the evidence in this case does not adequately support a judicial award of benefits for the following reasons:

1. Dr. Williams is not a treating source, hence, his opinion is not entitled to "controlling weight" as contemplated by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

2. Dr. Williams findings were based, at least in part, upon a "possible" organic factor, and to that extent, they are speculative. Furthermore, because he is a psychologist and not a medical doctor, Dr. Williams was not qualified to opine mental limitations based upon an underlying physical condition.

3. Other medical sources (i.e., Drs. Vandivier, Guerrero, and Amble) opined that, although the plaintiff suffers from a significant degree of mental limitation, the level of impairment is less than found by Dr. Williams.

If we were to decide this case de novo, we would perhaps award benefits. We cannot, however, conclude that the proof of disability is "overwhelming" or evidence of non-disability is utterly "lacking." Hence, *Faucher* directs us to refrain from recommending a judicial award of benefits. Therefore, we shall recommend that this matter be remanded to the Commissioner for a new decision and for further development of the medical evidence pertaining to the plaintiff's cognitive and emotional impairments, if any.

**Physical impairments**

This case was denied at the fourth and, alternatively, the fifth and final steps of the sequential evaluation process based upon a finding that the plaintiff retains the ability to perform her past relevant work and other light and sedentary jobs in the national economy (AR, pp. 16-17). On January 5, 2008, the plaintiff was examined, at the request of the Commissioner, by Snehal Patel, M.D. Dr. Patel's narrative report is at AR, pp. 243-246. Among other things, Dr. Patel opined that the plaintiff "has a moderate degree of limitation in manipulating fine objects secondary to her right thumb and index finger" (AR, p. 246). In light of Dr. Patel's findings and the record a whole, the state agency program physician, John Gedmark, found, inter alia, that the plaintiff is able to 1) lift/carry (including upward pulling) 10 pounds frequently and 20 pounds occasionally; 2) she has "unlimited" abilities to reach in all directions (including overhead), handle (gross manipulation), and feel (skin receptors); however, 3) she has "limited" ability to finger (fine manipulation) (AR, pp. 296 and 298).

In her written decision, the ALJ acknowledged that the "medical evidence shows some subjective restrictions regarding the claimant's thumb and trigger finer" (AR, p. 16). However, the ALJ found that Dr. Gedmark's finding of limited ability to finger (fine manipulation) was "not supported by any reliable or credible medical evidence of record" and, in fact, "the record does not demonstrate the existence of a medically determinable impairment which would be expected to result in any limitations in the use of her hands and fingers" (AR, p. 16).

The plaintiff contends that "the evidence of record supports that Ms. Turner would have significant limitations on the use of her upper extremity" (Docket Entry No. 10, p. 16). The magistrate judge concludes that any error in this regard was harmless because there is no indication that a "limited" ability to finger (fine manipulation) is incompatible with the requirements of the plaintiff's past relevant work and other light jobs in the national economy identified by the vocational expert (VE) at the administrative hearing (AR, pp. 44-45). The plaintiff argues that the error "cannot be found to be harmless" in light of Social Security Ruling (SSR) 96-9p, which provides that unskilled, <u>sedentary</u> work requires good use of both hands and fingers to manipulate small objects and that any significant manipulative limitation will result in an erosion of the occupational base and a finding of disability will usually apply (Docket Entry No. 10, p. 17). The undersigned concludes that the plaintiff's reliance on the Ruling is unpersuasive because the ALJ found that the plaintiff retains the ability to perform <u>light</u> work. Finding No. 5.

Finally, the plaintiff argues that the ALJ's physical residual functional capacity (RFC) Finding No. 5 is inadequate because the medical evidence shows that she requires a sit/stand option. The magistrate judge concludes that any error in this regard was harmless because the VE identified a significant number of light and <u>sedentary</u> jobs in the national economy that are compatible with

10

the plaintiff's limitations as a whole, for example information clerk and surveillance system monitor (AR, p. 45). The plaintiff has not shown that these jobs would be precluded by a need to alternate sitting/standing.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and for further development of the evidence pertaining to the plaintiff's cognitive and emotional impairments, if any, in light of Dr. Williams' findings.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).